## Benny *v.* Benny, Appellant.

*Divorce—Desertion—Separation encouraged by libellant—Attempted reconciliation.*

In an action for divorce on the ground of desertion, the decree of the lower court granting the divorce will be reversed, where it appeared that the respondent left the libellant, but that she wrote the libellant several letters requesting him to meet her and talk matters over; that after an absence of almost a year, she went back to the libellant's home for the purpose of making up with her husband and living with him; and that all the attempts at reconciliation made by the respondent were repulsed by the libellant.

Argued November 18, 1925. Appeal No. 296, October T., 1925, by respondent, from decree of C. P. No. 3, Philadelphia County, December T., 1923, No. 686, in the case of Frank T. Benny v. L. Jessamine Benny. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to Vincent A. Carroll, Esq., as master, who recommended that the libel be dismissed. On exceptions to the master's report the court sustained the exceptions and granted the divorce. Respondent appealed.

*Error assigned,* was the decree of the court.

*Joseph A. Allen,* for appellant.

*J. Frederick Jenkinson,* for appellee.

OPINION BY TREXLER, J.,   February 26, 1926:

This is an action of divorce.  The libel avers that L. Jessamine Benny deserted her husband on January 10, 1922, and persisted in said desertion for two years. The master filed a report recommending that the libel be dismissed.  This was approved by the court and an order dismissing the libel was duly entered.  Subsequently, the libellant filed a petition for reargument which was granted, and after the new argument, a final decree was entered granting the divorce.

We need not refer to the indignities to which the wife testified as justifying her leaving her husband. We may start out with the assumption that the respondent maliciously deserted the libellant.  There was a disagreement between them.  In the heat of the controversy, the wife told the husband that when he came home he would not find her there, and she carried her threat into execution.  When he came home he found she had removed her household belongings from the home.  After the respondent had been away for a few months she wrote to the libellant that he should meet her in Broad Street Station, suggesting that they talk matters over.  Later on he received several letters from her, requesting that he meet her, but he paid no attention to these.  On January 16th, 1923, after an absence of almost a year, the respondent went back to the libellant's home.  She had kept a key to the house.  The libellant rebuffed her, told her she had a ''hard cheek'' to come back to him after what she had done the previous year.  He told her that she could follow her own course—that she was the one at fault.  He now says that had she shown penitent feeling, or had made an apology, he might have considered having her back, but she had shown no such feeling.  This seems to impose a rather hard condition to reconciliation, for during the last quarrel, which ended in her leaving him, the honors seemed

to have been fairly well divided, and her notice to him that she would leave received no opposition on his part. He did not ask her to come back and live with him. This is his version of the affair—hers is rather different. The first words with which he greeted her when she went to his home were, "What the hell are you doing here? You have got a damn hard cheek coming here after the way you treated me." She said, "I have come to talk to you." He said, "I have got no time to talk to you." After some more conversation the respondent said, "What do you intend to do?" He said, "You have taken the course, now go on. I don't care what you do." In substance, there is not much difference in the narrations of the two parties, except that her account is more emphatic than his. We think the master was right in finding that the action of the husband, subsequent to the separation, indicated that he assented to the separation. She avers that she went there for purposes of making up with her husband and living with him. Her bona fides should have been tested by her husband, instead of this he repulsed her. There appeared to have been no attempt on his part to influence his wife to return. All the testimony points that he did not care for his wife's companionship, and that her absence from his home was agreeable to him. As was said in Thompson v. Thompson, 50 Pa. Superior Ct. 159—"The intent to desert is rebutted where the separation is encouraged by the other party or by mutual consent." She made the first advances, and he repelled them. We think the first action of the lower court in dismissing the libel was correct.

The assignments of error are sustained and the decree of the lower court granting the divorce is reversed and the libel is dismissed—the appellee to pay the costs.